WARNER v. GASTON, WILLIAMS & WIGMORE OF CANADA, Limited.

(Circuit Court of Appeals, Second Circuit. November 13, 1919.)

No. 8.

SHIPPING ⬅︎22—BROKER HAS RIGHT TO COMMISSION WHERE PURCHASERS FAILED TO OBTAIN PERMISSION TO PURCHASE UNDER BRITISH DEFENSE OF THE REALM ACT.

A broker, who, as authorized, procured purchasers, who entered into a satisfactory contract for purchase of a British steamship, which contract his principal afterward refused to perform, held not deprived of his right to the agreed commission because the purchasers had not obtained permission to purchase, as required by a British Defense of the Realm regulation which made its violation an offense, but did not invalidate the sale, and where the contract was repudiated on different grounds.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Phillip A. Warner against Gaston, Williams & Wigmore of Canada, Limited. Judgment for defendant, and plaintiff brings error. Reversed.

J. P. Nolan, of New York City (J. P. Nolan and Charles L. Cole, both of New York City, of counsel), for plaintiff in error.

Kirlin, Woolsey & Hickox, of New York City (L. De G. Potter and Cletus Keating, both of New York City, of counsel), for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. The plaintiff brought this action at law to recover of the defendants commissions as broker for having sold the British steamer Eskasoni for the sum of $475,000. The employment was evidenced by the following letter, supplemented by testimony that the plaintiff's commission was to be 2½ per cent.:

"December 11, 1916.

"Mr. P. A. Warner, 30 Church Street, New York City—Dear Sir: Referring to our conversation this afternoon, I beg to advise that you are authorized to offer the steamer Eskasoni for sale for four hundred and seventy-five thousand dollars ($475,000.00). Details as to terms of payment, transfer of steamer, etc., can be talked over when you have purchasers.

"Yours very truly,          J. B. Austin, Jr., Vice Pres. & Gen. Mgr."

The plaintiff introduced Philip Templeman and George A. Moulton, who entered into a formal written contract with the defendants, which fixed all "details as to terms of payment, transfer of steamer, etc." It was in the form of a charter party; the hire covering the purchase

---

⬅︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

price, and the defendants agreeing upon the expiration of the charter to make a bill of sale to the charterers, provided they had fulfilled all their obligations. The purchasers paid $5,000 down on the execution of the contract, and the defendants paid the plaintiff his commission thereon.

The defendants are a corporation of the Dominion of Canada, and the purchasers were subjects of Great Britain, residing in Newfoundland. The twelfth article of the contract was as follows:

"Twelfth. *Licenses and Permits*—The charterers agree to procure from the British or Dominion governments, or the government of Newfoundland, as may be necessary, any licenses or permits which may now be, or which may hereafter become, necessary as a condition of entering into any trade in which the charterers may wish to employ the said steamship, and to comply in all respects with the said licenses and permits and with any laws and governmental proclamations, rules, regulations, and/or restrictions which may be applicable to the said steamship as a British steamship."

The defendants offered in evidence section 39cc. of the British Defense of the Realm Regulations, which reads:

"39cc. A person shall not without permission in writing from the shipping comptroller, directly or indirectly and whether on his own behalf or on behalf of or in conjunction with any other person, purchase or enter into or offer to enter into any agreement or any negotiations with a view to an agreement for the purchase of any ship or vessel.

"If any person acts in contravention of this regulation, or if when any permission of the shipping comptroller has been granted under this regulation subject to any conditions, the person to whom it was granted fails to comply with any such condition, he shall be guilty of an offense against these regulations."

The purchasers had no such permission from the shipping comptroller, and the purpose of the defendants was to show that because of this, the purchasers not being able to buy, the defendants were justified in refusing to carry out the contract. But this regulation was not pleaded. No reliance was placed upon it at the time the defendants refused to perform, and it does not show on its face that the sale, though made without the written consent, was void and unenforceable. The only penalty, so far as the record shows, is that persons not conforming with the regulation will be guilty of a violation of it. There is nothing whatever to show that the British government would prevent performance of the contract. The apparent purpose of the regulation was to enable the authorities to keep track of all such negotiations about British shipping, and not to make sales without permission void.

Whether this is so or not, the only evidence the defendants got into the plaintiff's case as an excuse for their refusal to perform had no relation to the regulation whatever. That excuse was that the British consul at New York advised them not to sell the steamer to Templeman and Moulton, because they had on a previous occasion chartered a vessel to persons not favorably regarded by the British authorities. The trial judge over the plaintiff's exception directed a verdict for the defendants, on the ground that the purchasers were not able to buy because of their failure to comply with the regulation.

We think this was error. The record must be read as favorably to the plaintiff as possible. The sale of the steamer failed because the de-

fendants refused to perform. The plaintiff earned his commission when the contract between them and the purchasers was signed. The sale was then made with persons and on terms satisfactory to the defendants. The plaintiff had nothing to do with the terms of the contract, and was not responsible for the performance of it. The purchasers were in all respects approved by the defendants, the broker's principal. Kalley v. Baker, 132 N. Y. 1, 29 N. E. 1091, 28 Am. St. Rep. 542; Alt v. Doscher, 102 App. Div. 344, 92 N. Y. Supp. 439; Bunnell v. Chapman, 173 App. Div. 108, 159 N. Y. Supp. 381. The motion to direct a verdict for the defendants should have been denied, and if they declined to go on with their case a verdict should have been directed for the plaintiff.

The judgment is reversed.