## KEEVENY v. CHARLES R. McCORMACK & CO.

(Circuit Court of Appeals, Second Circuit.    April 14, 1920.)

No. 172.

1. Brokers 58—Not entitled to commission for negotiating sale of ship in violation of Shipping Board Act.

Under Shipping Board Act, § 9 (Comp. St. § 8146e), prohibiting under penalty the sale of any vessel of United States registry to any person not a citizen of the United States without approval of the Board, a broker *held* not entitled to commission for negotiating the sale of a vessel in violation of the act, which sale the board refused to permit.

2. Brokers 86(5), 88(3)—Evidence insufficient to relieve owner from liability for commission on sale of ship and to present case for jury.

Defendant, which refused to complete sale of a vessel negotiated for it by plaintiff as broker at an authorized price, but offered to sell to the same purchaser at an increased price, *held* not released from liability to plaintiff for his agreed commission, on the ground that it was not shown that the purchaser was able to pay the price, because his testimony indicated that others were to be interested with him in the purchase, and the case should have gone to the jury.

Hough, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Southern District of New York.

Action by Eugene D. Keeveny against Charles R. McCormack & Co. From a judgment dismissing the complaint as to the first and second causes of action stated, plaintiff brings error. Reversed, as to second cause of action.

John M. Gardner, of New York City, for plaintiff in error.

Wherry & Mygatt, of New York City (Frederic E. Mygatt and William M. Wherry, Jr., both of New York City, of counsel), for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. The questions in this case arise out of the dismissal by the court at the close of the plaintiff's case of the first and second causes of action in the complaint.

The first cause of action alleged that the defendant, owner of the motorship City of St. Helens, agreed to pay the plaintiff a commission of 5 per cent. on the price if he found a purchaser acceptable to the defendant; that in the month of October the plaintiff did find a purchaser ready, willing, and able to purchase the vessel for the sum of $460,000; and that the defendant agreed to accept said sum from the said proposed purchaser, by reason whereof the plaintiff became entitled to the sum of $23,000, no part of which had been paid, although duly demanded.

[1] The plaintiff in his opening stated that the purchaser was a Frenchman, the representative of a French syndicate; that the contract had been executed between him and the defendant for the pur-

chase of the vessel for the sum of $460,000, and $40,000 had been deposited by the purchaser to be paid on delivery of the bill of sale.

Section 9 of the Act of September 7, 1916 (Comp. St. § 8146e), to establish a United States Shipping Board, etc., provides:

"When the United States is at war, * * * no vessel registered or enrolled and licensed under the laws of the United States shall, without the approval of the board, be sold, leased, or chartered to any person not a citizen of the United States, or transferred to a foreign registry or flag. No vessel registered or enrolled and licensed under the laws of the United States, or owned by any person a citizen of the United States, except one which the board is prohibited from purchasing, shall be sold to any person not a citizen of the United States or transferred to a foreign registry or flag, unless such vessel is first tendered to the board at the price in good faith offered by others, or, if no such offer, at a fair price to be determined in the manner provided in section ten.

"Any vessel sold, chartered, leased, transferred, or operated in violation of this section shall be forfeited to the United States, and whoever violates any provision of this section shall be guilty of a misdemeanor and subject to a fine of not more than $5,000 or to imprisonment of not more than five years, or both such fine and imprisonment."

By the first section of the act (Comp. St. § 8146a) the term "person" includes corporations, partnerships, and associations, whether domestic or foreign.

The Shipping Board refused to permit the sale. Although nothing was said upon this subject in the contract, the statute is written into it as a part of the law of the land, where the contract was made and to be executed. By this law neither the purchaser could buy nor the owner sell, and we think the trial judge was right in dismissing this cause of action.

Great reliance is placed by the plaintiff on our decision in Warner v. Gaston, 261 Fed. 993, —— C. C. A. ——, but we do not think it applies. In it the British regulation was not relied on by the defendants when they refused to perform, nor pleaded as a defense after suit brought. There was nothing to show that the British government intended to make sales without permission of the Shipping Controller void, nor was there any penalty so far as the record showed for such a sale. The purpose of the regulation was apparently to enable the government to keep track of all such negotiations.

[2] The second cause of action stated that the plaintiff, under the same agreement with the defendant, had procured in November, 1917, another purchaser ready, willing, and able to buy the vessel for $460,-000, by reason whereof he became entitled to $23,000, no part of which had been paid, although duly demanded.

The purchaser in this case was one Dougherty, an American citizen, and a member of the firm of J. F. Whitney & Co. The plaintiff testified that Hauptman, vice president and treasurer of the defendant, a corporation of California, representing it in the matter, went with him to the office of J. F. Whitney & Co., talked over the sale of the steamer, and agreed to accept $460,000 if sold to an American citizen who would assume the other obligations that had been agreed upon. In pursuance of this conversation the following letter to the defendant was forwarded to Hauptman, then at Washington:

"New York, November 23, 1917.

"Messrs. Chas. R. McCormack & Co., New York, N. Y.—Gentlemen: We offer your firm for the Aux. Schr. City of St. Helens the sum of $460,000, less $10,000 commission to J. F. Whitney & Co., vessel to be registered in the name of Theodore Dougherty; all other conditions covering charter party, hull insurance, etc., as discussed with your Mr. Hauptman. If you will be good enough to draw a contract as you understand it, we will secure buyer's signature to same. Mr. Theodore Dougherty is an American-born citizen. This offer has no connection with any previous negotiations we have on this vessel with yourselves.

"Yours very truly,                   J. F. Whitney & Co.,
                                          "Per Ph. Stauderman."

The plaintiff testified as to a conversation with Hauptman on his return from Washington:

"The conversation between us. I said to him, I said, 'Well you got my firm offer at Washington?' He said, 'Yes.' I said, 'I didn't get your long-distance telephone call, because I was out of the hotel at the time.' And I said, 'Well, I am glad the deal has gone through finally. Now, it is only necessary for you to draw up the contract. They are ready to sign it and put up the money and close the deal. I have complied with what you wanted. This Mr. Dougherty is a native-born American citizen. There cannot be any question about him. The terms are as you said it would be, less 5 per cent. commission, which you agreed.' He said, 'I will tell you, out of the 5 per cent., commission, Mr. Keeveny, you will have to take care of Whitney for $10,000, because that was the understanding.' I said, 'That is the understanding.' So he walked up and down the floor a few moments, and finally he said: 'I will tell you, Keeveny, about this thing. Our people out on the Pacific Coast are getting pretty chesty about these boats. The conditions are looking a little bit better. The Shipping Board is liable to commandeer the Allard and the Portland.' Whether he said they had commandeered them or not, I don't know, or it was about to happen; but he said, 'They feel kind of chesty,' and he said: 'These people down here will stand for more money. They want the boat bad enough, no doubt.' 'So,' he said, 'I will tell you what you do, you go back at them, and tell them to raise the price to $475,000.' And I told him: 'How in the world can I go down there now, after you agreeing to sell for $460,000? They have made you a firm offer on your own proposition, complying with every condition you exacted. If I would go in their office, they would slam the door in my face.' I said: 'You have no right to raise this price. It is not business. You said you would close.' I said: 'My letter to you, that I sent you accompanying that firm offer to Washington, told you that if you would phone me or wire me they would come to Washington to close it down there at Washington; if you had any business to keep you there for three or four days, they would come down on the night train and get there in the morning and close it up there.' So I told him that I would not go down to Whitney & Co.'s office and see them, or try to raise this price. He could do as he felt about it. I felt my commission was earned, and I wanted it. I had performed my services, and, if he was going to back out a second time, then I could not help it, that was all. He said: 'Well, I will tell you, I don't know what to say, but I tell you, they want to get more money, and they are anxious to get the boat, and will pay more money.' And he said, 'I am going up to the hotel to think it over.'"

The foregoing was confirmed by the testimony of the witness Parker.

November 30, 1917, the defendant replied to the letter from the purchaser as follows:

"November 30th, 1917.

"Messrs. J. F. Whitney & Co., 8–10 Bridge Street, New York City—Gentlemen: This will acknowledge receipt of your favor of November 23d, in which you make us a firm offer to the sum of $460,000, less a commission of

$10,000 to yourselves, for the American motorship or auxiliary schooner City of St. Helens, vessel to be transferred or sold by us to Theodore Dougherty, an American citizen. In reply will say that we must decline your offer.

"We are willing, however, to sell the above-named vessel through you, to Theodore Dougherty, for the sum of four hundred and seventy-five thousand ($475,000) dollars cash, less a commission of $10,000 to J. F. Whitney & Co., providing that you are in a position to accept all the other terms and conditions of this offer to sell this vessel, of which terms and conditions we believe you are fairly well informed through conversations had between your Mr. Stauderman and the writer. If the above-named price for this vessel is satisfactory to you, we are prepared to proceed at once to draw up a contract between us covering the terms and conditions above referred to.

"The offer above made you is subject to acceptance on or before 5 o'clock p. m. to-day, November 30, 1917, and is contingent upon our being able to agree on all the terms and conditions. In making the above offer, we are doing so with the distinct understanding, as stated in your letter of November 23d, that this offer has no connection in any manner with any previous negotiations had with you regarding the sale of this vessel to Capt. Pierre Le Gougnec or to Alliance Shipping Company.

"Yours very truly,        Chas. R. McCormack & Company,
"By ————, Vice Pres. & Treas."

The court dismissed this cause of action, upon the ground that the plaintiff had not shown that Dougherty was able to buy the vessel. This was principally upon his testimony as follows:

"Q. How were you going to pay for this boat, Mr. Dougherty? A. In the same way I would expect to pay for any boat.

"Q. From your own money? A. Some of my own money; yes, sir.

"Q. Where were you going to get it? A. Well, our firm has purchased other boats, and we have generally managed to find the money."

Upon redirect examination Dougherty was asked:

"Q. Now, Mr. Dougherty, if that offer of yours to pay $460,000 under the terms and conditions specified had been accepted by McCormick & Co., would you have been able and would you have paid cash for the same?

"Mr. Mygatt: I object to that as incompetent and calling for a conclusion.

"The Court: Objection sustained. It is clearly incompetent. (Exception.)

"Q. Would you have completed the purchase?

"Mr. Mygatt: I make the same objection.

"A. I would.

"The Court: Objection sustained. Strike out the answer.

"Mr. Gardner: I take an exception. That is all."

Dougherty's answer is quite consistent with the meaning that he had not $460,000 in cash at the moment, which might be said of many millionaires. The fact that he intended to associate others with him in the ownership of the boat does not show that he could not pay for it himself. He was the purchaser, and liable for the price, notwithstanding his intention to associate others with him in the venture. Such syndicates are a common form of investment. The plaintiff was not obliged to show what friends Dougherty had interested or expected to interest in the venture. Indeed, negotiations to that effect after the defendant had refused to perform would have been a pure waste of time.

But as between the plaintiff and the defendant, the plaintiff, if his testimony were believed, was entitled to his commission if he produced a purchaser ready, willing, and able to buy the vessel for $460,000. It clearly appears that Dougherty was ready and willing to buy at that

price, and that he was acceptable to the defendant appears from its letter that it would sell to him at that increased price of $475,000. The jury might well have found from these facts that Dougherty was ready, willing, and able to buy for $460,000, the price fixed upon between the plaintiff and the defendant, upon which the plaintiff was to receive a commission of 5 per cent. See Mooney v. Elder, 56 N. Y. 238, and Duclos v. Cunningham, 102 N. Y. 678, 6 N. E. 790.

Judgment reversed.

HOUGH, Circuit Judge (dissenting in part). With the opinion of the court as to the first cause of action I entirely agree.

In respect of the second cause of action the complaint averred that plaintiff had found "a purchaser ready, willing, and able" to buy defendant's ship, which allegation was specifically denied. It was therefore incumbent on plaintiff affirmatively to prove the applicability to his purchaser of each one of the foregoing adjectives. This was never done. I do not think there was a refusal to accept plaintiff's proposed purchaser on some ground other than his inability to perform, but if such was the case the contract as pleaded still required proof under all three heads, and the defense of inability was still open. The cases are collected in 4 R. C. L. 307 et seq.

I dissent as to the second cause of action.